## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Daniel E. Campbell, Affiant, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, state as follows:

### Introduction and Agent Background

1.     I am a Special Agent with the ATF and have been since June 1990.  I received training at the Federal Law Enforcement Training Center and at the ATF National Academy, both located in Glynn County, Georgia, and at DEA Basic Drug Investigator Training.  Additionally, I served on the Special Response Team for a period of five years, a position which required completion of basic training and regular quarterly training thereafter, and participation in numerous assignments, to include the execution of high-risk search and arrest warrants, throughout the United States.

2.     As an ATF Special Agent, I have participated in and conducted dozens of investigations involving firearm trafficking and possession of firearms by persons including felons, gang members, parolees, narcotics users and narcotics and firearms traffickers and have become familiar with the crimes commonly committed by criminal street gang members and their associates.  I am also familiar with the methods that are most commonly used by unlawful firearms traffickers and people dealing in firearms without a Federal Firearms License.  Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws, and other laws as they pertain to violent crime.

3.     This affidavit is based on an ongoing, multi-agency investigation into the criminal activities of a criminal organization known as the "Wendover Street Gang" and a subset of the Wendover gang referred to as "NOB" (Norton, Olney and Barry Streets), collectively "Wendover/NOB."  Wendover/NOB is a Boston-based street gang.  The agencies involved in the

investigation include, but are not limited to, ATF, the Boston Police Department (BPD) and the Massachusetts State Police (MSP).

4.      The Wendover/NOB gang and associates are currently being investigated for offenses involving racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. 922(a)(1)(A); and the possession of firearms and ammunition by convicted felons, in violation of 18 U.S.C. § 922(g) (the "Target Offenses").   Specifically, Wendover/NOB gang member RICKY PINA is being investigated for violations of 18 U.S.C. §§ 922(g) and 1962(d), and 21 U.S.C. § 846.

5.      This affidavit is being submitted in support of an application for search warrants authorizing the examination of the following two cell phones:

a.   one (1) black Apple iPhone, Model: A1699, IMEI # 353265076887167; and

b.   one (1) black LG Smartphone, Model: LM-X22CMA, Serial Number 905CQLH0994312;

hereinafter referred to as the "TARGET TELEPHONES" and more specifically described in Attachment A.   The TARGET TELEPHONES are currently located at the New England Regional Computer Forensics Laboratory, 201 Maple Street, Chelsea, MA.   For the reasons stated below, there is probable cause to believe that the TARGET TELEPHONES contain evidence, fruits, and instrumentalities of the Target Offense, more particularly described in Attachment B.

6.      The facts in this affidavit come from my personal observations and review of oral and written reports by other law enforcement officers, records including information from database checks and my training and experience.   This affidavit is intended to show merely that there is

probable cause for the requested search warrants and does not set forth all of my knowledge about this matter.

**Probable Cause to Believe That a Federal Crime Was Committed**

7.　　On July 20, 2019, BPD officers were on directed patrol in the area of Dudley, Wendover and Humphries Streets due to an increase in shootings and other acts of violence, including homicide, between the Wendover/NOB gang and a rival gang known as the "Cameron Street Gang" or "Cameron."　At approximately 1:08 p.m., BPD officers observed a 2003 silver Honda Accord with excessive window tint and no front license plate.　Officers queried the back license plate which revealed that the vehicle was registered to PINA.　The officers knew PINA to be an active Wendover/NOB gang member/associate with a prior felony conviction for unlawful possession of a firearm.　At some point before activating their lights and sirens, the officers believe the occupants of the Honda saw them and proceeded to accelerate at a high rate of speed in what appeared to the officers to be an attempt to evade them.　Eventually, the vehicle came to a stop and officers cautiously approached.　The windows were all in the up position despite the officers knocking on the windows and asking that they be lowered.　One of the officers then opened the rear passenger door and instructed the front seat passenger to roll his window down, to which the passenger replied that the car was shut off.　The driver and passenger were observed to be the sole occupants of the vehicle.　One of the officers immediately recognized the driver as PINA.　The officers also recognized the passenger as Michael BRANDAO, who has also been identified as an active Wendover/NOB gang member/associate who has had frequent interactions with BPD, and in fact had been specifically named in BPD safety bulletins describing the on-going violence between Wendover/NOB and Cameron.

8.     Based on these observations and their prior knowledge, PINA and BRANDAO were asked to exit the vehicle so that they could officers could pat them down for officer safety, following which, they were asked to step to the rear of the vehicle so that officers could conduct a protective search of the vehicle's cabin for weapons.   During the protective search, one of the officers observed, in plain view, a plastic bag containing what appeared to be blue pills clearly visible behind the driver's side air conditioning vent.   Based on the appearance of the pills, and his training and experience, the officer believed the pills contained some form of opioid.   PINA was asked about the pills and also whether there was anything else inside the vehicle PINA should not have, a question that elicited no response.   BPD then placed PINA in handcuffs for the remainder of the frisk.   One of the officers was able to easily remove the air conditioning vent and upon doing so, immediately observed a black firearm underneath the plastic bag.   At that time, BRANDAO was also handcuffed.[1]   Based on the officers' knowledge that PINA is a convicted felon and as such, prohibited from possessing a firearm, he was read his *Miranda* rights and placed under arrest. The firearm, which had an obliterated serial number, was determined to be a Smith & Wesson, M&P Shield 2.0 with eight (8) rounds in the magazine and one (1) round in the chamber.   The pills, of which there were nine (9), were blue in color and engraved with the stamp "A 51."[2]   Based on their training and experience, which included recovering very similar pills during other arrests, the officers on scene believed the pills would contain a controlled substance, specifically oxycodone and/or fentanyl.

---

[1] BRANDAO was ultimately released without charge.

[2] The pills are currently at the lab but have not yet been tested due to the lab's current testing back-log.   Based on a visible inspection of the pills and the fact that virtually identical blue pills sold in the same area and also engraved with the stamp A51 have been determined to contain fentanyl, I believe, based on my training and experience, that these pills will likely contain fentanyl.

9.      PINA was then transported to a BPD station where he was booked and charged with Unlawful Possession of a Firearm - 2nd Subsequent Offense, Unlawful Possession of Ammunition, Defaced Firearm Serial Number, Carrying a Loaded Firearm on a Public Way and Possession of Class B Drugs, as well as several motor vehicle citations.  It was also determined that PINA is currently on probation until November 18, 2019 for a prior unlawful possession of a firearm conviction.  The TARGET TELEPHONES were recovered from PINA's person during the booking procedure and secured in the Nashua Street Jail Property Room.  On July 26, 2019, BPD Detective obtained a state search warrant for the TARGET TELEPHONES, following which, the phones were transferred to the New England Regional Computer Forensics Laboratory in Chelsea, MA where they remain unsearched until such time as federal search warrants are obtained.

**Wendover/NOB and Probable Cause that PINA is a Member/Associate of Wendover/NOB**

10.      Federal and local investigators have been involved in the investigation of Wendover/NOB for approximately two years.   The investigation has involved numerous investigative techniques, including the use of confidential informants and undercover law enforcement officers, controlled purchases of narcotics and firearms, surveillance of Wendover/NOB members/associates and the places they congregate, review of social media postings by gang members/associates, and interviews and debriefs with individuals familiar with the inner workings of the gang.

11.      I am aware that Wendover/NOB members/associates have been involved in numerous shootings and violent altercations throughout the greater Boston area with rival gangs, specifically, the Cameron Gang.  Wendover/NOB members/associates have also admitted to obtaining illegal drugs and firearms from within the state of Massachusetts and other states.

Wendover/NOB members/associates have been arrested for various crimes, including homicide, possession with intent to distribute illegal drugs, illegal possession of firearms and ammunition, assault and others.

12.     As stated above, PINA has been identified by law enforcement as an active member/associate of Wendover/NOB.  I have spoken with other law enforcement officers who have confirmed that, in addition to his July 20, 2019 traffic stop and arrest, PINA has had numerous other documented encounters with BPD.  At the time of these encounters, PINA has been, with limited exception, in the company of other identified Wendover/NOB members/associates.

13.     Law enforcement has been monitoring social media sites and has observed on-line posts, photos and videos generated by Wendover/NOB gang members/associates.  This includes rap music videos featuring Wendover/NOB members/associates posted on sites such as YouTube where gang members rap about gang-related crimes allegedly committed by Wendover/NOB members.  Many on-line postings depict Wendover/NOB gang members/associates wearing clothing that represents Wendover/NOB membership/association, holding real or replica firearms, displaying gang hand signs, making threats to rival gang members, and reenacting homicides and/or shootings that the gang may have committed.  PINA has been captured on several of these social media posts and rap videos along with other known Wendover/NOB gang members/associates.

14.     Information about the firearm and pills seized from PINA's vehicle on July 20, 2019 provide additional support for PINA's association with Wendover/NOB.  Although the main serial number of the firearm had been obliterated, law enforcement was able to recover the serial number from a secondary location inside the gun.  A trace of that number revealed that the firearm had been purchased in July 2018 by an individual by the name of Michael Lebron.  In an unrelated

investigation, Lebron was subsequently charged in federal court with violations of federal firearms laws[3], and on May 9, 2019, he pled guilty to Dealing in Firearms Without a License, in violation of Title 18, United States Code, Section 922(a)(1)(A).[4] It was ultimately determined that, prior to his arrest, Lebron had purchased approximately thirty-two (32) firearms in the state of New Hampshire which he then re-sold in Massachusetts during the five-month period between April 5, 2018 and August 9, 2018. From my training and experience, I am aware that gang members often share firearms amongst themselves.

15. Furthermore, the nine (9) blue pills found in the bag behind the air conditioning vent provide another connection between PINA and Wendover/NOB. Blue pills engraved with the A51 stamp, identical to those seized from PINA, have been purchased by confidential informants from known Wendover/NOB members/associates pursuant to our investigation.

16. It is for all these reasons that I believe that PINA is an active member/associate of the Wendover/NOB gang.

### Probable Cause to Believe the TARGET TELEPHONES Contain
### Evidence, Fruits and Instrumentalities Related to Violations of the Target Offenses

17. Based on the facts set forth in this affidavit and additional information obtained during our investigation, there is probable cause to believe the TARGET TELEPHONES contain evidence, fruits and instrumentalities of the Target Offenses.

18. PINA has been incarcerated since his arrest on July 20, 2019, and law enforcement has been monitoring his jail calls. During several telephone calls with individuals who have been identified as Wendover/NOB members/associates, PINA confirms that the phones taken from him at the time of his arrest contain information related to his drug trafficking business, including his

---

[3] Case No. 18-10422-WGY
[4] Lebron was sentenced on September 5, 2019 to sixty (60) months in the Bureau of Prisons.

drug connections.  On one call, he is speaking with his brother, Patrick Pina, also an identified Wendover/NOB member/associate.  During this call, he urges his brother to retrieve the TARGET TELEPHONES from the jail and provide access to one of the phones to other identified Wendover/NOB members/associates.  Based on the entirety of the conversation and my training and experience in working on drug investigations, it appears that PINA wants his associates to maintain his drug business during his incarceration.

19.    In addition to PINA's own statements, based on my training and experience, I am aware that individuals frequently use cell phones to carry out, communicate about, and store records regarding their daily activities, including their commission of crimes.  These tasks are frequently accomplished by sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling meeting times, and creating and storing images and videos of their movements and activities.

20.    Based on the investigation in this case, there is probable cause to believe the TARGET TELEPHONES will also contain communications, photos, videos and other items concerning the conspirators' membership in, and affiliation with, the Wendover/NOB and that those items will constitute evidence of the Target Offenses.

21.    Based on my training and experience, I am aware that gang members will often post pictures and videos on social media as a way to increase the gang's status in the criminal community.  They will also utilize cell phones to facilitate their illegal activities, including by communicating with other gang members/co-conspirators before, during and after the commission of crimes to organize themselves, set up meeting times and cover up their crimes.  Based on my training and experience, I am aware that street gang members/associates will maintain images

and/or videos related to the gang on their cell phones, such as pictures of gang members congregating together and videos in which gang members tout the gang

22.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones can now function essentially as small computers.   The TARGET TELEPHONES are types of smartphones.   Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data.   Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device at specific times, including the times that crimes were being committed.

23.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted or viewed locally or over the Internet.   This is true because:

    a.   Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.   Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one;

    b.   Even after files have been deleted, they can be recovered months or years later using forensic tools.   This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.   In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file

    c.   Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it.   This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.   It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task;

     d.   Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

## <u>CONCLUSION</u>

24.    Based on the information described above, there is probable cause to believe that evidence, as more fully described in Attachment B, exists on or in the TARGET TELPHONES, described more fully in Attachment A, related to violations of the Target Offenses, and I therefore seek authority to search for and seize the items described in Attachment B.

25.     Finally, in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for approximately 90 days until December 5, 2019, because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and/or change patterns of behavior.

*FURTHER YOUR AFFIANT SAYETH NAUGHT.*
Sworn to under the pains and penalties of perjury,

_____
Special Agent Daniel E. Campbell
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Subscribed and sworn to before me this 6th day
of September, 2019

_____
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE



**ATTACHMENT A**
**Description of Equipment to Be Searched**

The TARGET TELEPHONES to be searched consist of the following:

    a.    **One (1) black Apple iPhone, Model: A1699, IMEI # 353265076887167; and**

    b.    **One (1) black LG Smartphone, Model: LM-X22CMA, S/N 905CQLH0994312.**

The TARGET TELEPHONES are located at the New England Regional Computer

Forensics Laboratory, 201 Maple Street, Chelsea, MA 02150.

Apple iPhone – Front

Apple iPhone – Back





LG Phone – Back

 

**ATTACHMENT B**
**Materials to be Searched for and Seized**

The items to be seized are stored electronic data and electronic files, including:

      a.     All records on the TARGET TELEPHONES described in Attachment A that relate to violations of Title 18, United States Code Sections 922(g) and 1962(d), and Title 21, United States Code Section 846, for the time period June 1, 2018 through July 22, 2019, including:

    1.   Content, including but not limited to, messages, text communications, e-mails, call logs, pictures, audio files, video files and social media content discussing or relating to the commission of violent crimes including, but not limited to, shootings, unlawful possession of firearms and/or ammunition, assaults, home invasions and robberies, and drug trafficking crimes by Wendover/NOB gang members and/or associates;

    2.   Call, email and message data showing times such communications were sent or received and from where and by whom;

    3.   Content discussing or relating to the commission of illegal activities by PINA and other Wendover/NOB gang members/associates;

    4.   Content discussing or relating to gang membership and association, including:

        i.   Gang-related photos or images, such as group photos of gang members, photos of other gang members/associates, photos of gang-related graffiti, photos of gang-related hand signs, photos of guns or drugs possessed by the gang, photos of stacks of money, and photos of gang-related symbols; and

        ii.   Photos or videos that display gang-related tangible items, such as clothing tattoos, memorial pins, and other items bearing gang symbols or supporting gang membership;

    5.   Information pertaining to the existence, identity, and travel of PINA and other unidentified Wendover/NOB members' acts taken in furtherance of the crimes listed above;

    6.   Passwords, encryption keys, and other information that may be necessary to access items on the TARGET TELEPHONES;

    7.   Records relating to accounts held with companies providing Internet access or remote storage of either data or storage media;

8. Copies of bank records, checks, wire transfers, withdrawals, deposits, credit card bills, bank account information and other financial records maintained in the electronic data of the equipment.

b.     Evidence of user attribution showing who used or owned the TARGET TELEPHONES from which the electronic information was extracted, at the time when information was created, edited, or deleted, such as logs, phonebooks, usernames, passwords, documents, browsing histories, communications, photographs, text messages and application dates, and including evidence of use with other electronic devices or storage services.

c.     Records evidencing the use of the Internet including:

i.   Records of Internet Protocol addresses used;

ii.  Records of internet activity, including firewall logs, caches, browser history and cookies. "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of use-typed web addresses; and

iii. Evidence of Wi-Fi networks used.

d.      As used above, the terms, "data", "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer of electronic storage (such as Subscriber Identity Module (SIM card), flash memory or other media that can store data) and any photographic form.